UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| LOUIS L. VIERRA, | ) | Case No. 07-00640-TLM |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JERROD CATMULL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 07-06034-TLM |
| | ) | |
| LOUIS L. VIERRA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

Jerrod Catmull ("Plaintiff") seeks a determination that a debt arising from an Idaho state court default judgment entered in his favor against Louis L. Vierra ("Debtor") will be excepted from Debtor's prospective chapter 13 discharge. Before the Court is Plaintiff's Motion for Summary Judgment. *See* Adv. Doc. No.

MEMORANDUM OF DECISION - 1

9 ("Motion").[1]  The issue as framed by the Motion and by Debtor's opposition[2] is whether the default judgment entered here by an Idaho court is entitled to issue preclusive effect on the §§ 523(a)(4) and (6)[3] causes of action in the instant adversary proceeding.

The Court has reviewed and considered the parties' submissions, the arguments at the hearing, and applicable authority.  The Court concludes, first, that the § 523(a)(6) cause is not ripe for consideration.  Second, the Court concludes the state court judgment is not issue preclusive in regard to nondischargeability under § 523(a)(4).  The issue of whether the judgment debt will be excepted from Debtor's § 1328(a) discharge will be scheduled for trial.

## BACKGROUND AND FACTS

On April 10, 2006, Plaintiff filed a complaint against Debtor in Idaho state court, alleging breach of contract, conversion, and breach of fiduciary duty.  Adv.

---

[1] The Court takes judicial notice of its files in the chapter 13 case, Case No. 07-00640-TLM, pursuant to Fed. R. Evid. 201.  Pleadings in the chapter 13 are identified by "Doc. No." and pleadings in the instant adversary proceeding, are identified by "Adv. Doc. No.".

[2] Debtor has disputed the alleged nondischargeability of the state court judgment. *See* Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Adv. Doc. No. 14.  At the hearing, Debtor raised an additional argument, not in his pleadings or brief, challenging the validity of the debt owed to Plaintiff.  However, Debtor scheduled a $53,365.41 debt to Plaintiff.  Doc. No. 1 at schedule F.  Debtor did not indicate that this debt was disputed, contingent, or unliquidated.  *Id*.  Debtor was unable to explain at hearing how his listing of the debt in this manner was not an admission to the existence of the claim under Fed. R. Evid. 801(d), or why the prebankruptcy judgment was not final.  He thereafter abandoned this argument.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (2005).

MEMORANDUM OF DECISION - 2

Doc. No. 9 at Ex. 4 ("Complaint"). In general terms, the Complaint relates to an agreement between Plaintiff and Debtor involving ownership and operation of a nightclub.

Debtor was personally served with the Complaint, but he did not appear or file an answer or any other responsive pleading. Plaintiff moved for entry of default and default judgment. *See* Idaho R. Civ. P. 55. The Idaho court conducted no evidentiary hearing on the request for judgment.[4] Plaintiff did file an affidavit in support of default judgment, though it only very briefly and simply stated that he verified as true and accurate all allegations made in the Complaint. Plaintiff prepared and submitted to the state court proposed findings and conclusions, which were entered by the presiding judge. Adv. Doc. No. 9 at Ex. 2 ("Findings of Facts and Conclusions of Law").[5] On June 19, 2006, the state court entered a judgment against Debtor, incorporating the Findings of Fact and Conclusions of Law. *Id*. Plaintiff was awarded $48,819.03, plus post-judgment interest.

Some ten months later, on April 24, 2007, Debtor filed a chapter 13 petition and a proposed plan. Debtor's plan, as amended, was confirmed on September 11,

---

[4] *Cf.* Idaho R. Civ. P. 55(b)(2) ("If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.").

[5] The Findings of Facts and Conclusions of Law restate almost verbatim the allegations in the Complaint. The difference in language between the documents is primarily the rewording of allegations into the form of findings or conclusions. The substance is effectively the same.

MEMORANDUM OF DECISION - 3

2007. The plan requires total payments to the trustee of $25,629.74 over five years. This will provide sufficient funding for payment of administrative expenses, a secured tax claim, and priority claims. Distribution to unsecured creditors will be minimal.

On July 25, 2007, Plaintiff commenced this adversary proceeding, alleging that the judgment debt was nondischargeable pursuant to §§ 523(a)(2), (a)(4) and (a)(6). Adv. Doc. No. 1. Plaintiff, however, moved for summary judgment on the §§ 523(a)(4) and (a)(6) causes only. Adv. Doc. No. 9.

## DISCUSSION AND DISPOSITION

### A. Summary judgment standards

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

The Court does not weigh evidence in resolving such motions but, rather, determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a

reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992). The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597, 00.4 I.B.C.R. 175, 178 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)).

### B. Exceptions to chapter 13 discharge, and ripeness

#### 1. General discharge and hardship discharge in chapter 13

Two types of chapter 13 discharge are provided for in § 1328. Section 1328(a) provides for a general discharge after the debtor completes all payments under the plan.[6] In contrast, § 1328(b) provides for a "hardship" discharge even though the debtor fails to complete payments under the plan, but only if the debtor can meet certain criteria.[7]

---

[6] Section 1328(a) provides:

Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan . . . unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under 502 of this title, except any debt– . . . (specified in paragraphs (1) through (4) of this subsection).

[7] Section 1328(b) provides:

(b) Subject to subjection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a debtor that has not completed payments under the plan only if–

(continued...)

MEMORANDUM OF DECISION - 5

Prior to BAPCPA, a discharge under § 1328(a) discharged several types of debts not dischargeable under chapter 7. Section 1328(a)(2) excepted from a pre-BAPCPA general chapter 13 discharge debts specified in §§ 523(a)(5), (8), or (9). *See* § 1328(a)(2) (2000).

Additional types of debts are now excepted from a § 1328(a) discharge in a chapter 13 case commenced after BAPCPA's October 17, 2005 effective date.[8] Amended § 1328(a)(2) adds debts specified in § 507(a)(8)(C) or in §§ 523(a)(1)(B), (1)(C), (a)(2), (a)(3) or (a)(4). Missing from this list is § 523(a)(6) which excepts from discharge debts for willful and malicious injury by

---

[7](...continued)
      (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

      (2) the value, as of the effective date of the plan, of the property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

      (3) modification of the plan under section 1329 of this title is not practicable.

[8] The debts excepted from discharge in § 1328(a)(1) (debts arising under § 1322(b)(5)) and the debts excepted from discharge in § 1328(a)(3) (debts for restitution or for a criminal fine included in a sentence on the debtor's conviction of a crime) remain the same pre- and post-BAPCPA. Post-BAPCPA, § 1328(a)(4) was added and § 1328(a)(2) now provides:

    (a) The court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt–
    . . .
        (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a).

MEMORANDUM OF DECISION - 6

the debtor.[9] However, BAPCPA did add § 1328(a)(4) to except from a general chapter 13 discharge any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." *See* § 1328(a)(4). Section 523(a)(6) is still included as an exception to a § 1328(b) hardship discharge by virtue of § 1328(c)(2)'s incorporation of § 523(a), which BAPCPA did not change.[10]

### 2.    Ripeness of chapter 13 discharge issues

Given this statutory framework, the Court turns to Plaintiff's claims, as advanced by the Motion. This first requires consideration of whether the issues framed by the Motion are ripe for resolution. Ripeness is "peculiarly a question of timing." *18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580

---

[9] Section 523(a)(6) provides:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . .
>    (6)  for willful and malicious injury by the debtor to another entity or to the property of another entity.

[10] Section 1328(c)(2) provides:

(c)  A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt–

. . .
>    (2)  of a kind specified in section 523(a) of this title.

MEMORANDUM OF DECISION - 7

(1985)). This doctrine "prevents courts, through avoidance of premature adjudication, from entanglement in theoretical or abstract disagreements that do not yet have a concrete impact on the parties." *Id.*

In the context of chapter 13 dischargeability actions, whether the dischargeability issue is ripe prior to the debtor's completion of payments under the plan depends on the specific cause alleged. *Superior Court for the State of Cal. v. Heincy (In re Heincy)*, 858 F.2d 548 (9th Cir. 1988), held that the question of dischargeability of a debt for restitution was not ripe while the debtors' plan was in progress because:

> If the [debtors] ultimately complete payments under the plan, their discharge would be controlled by 11 U.S.C. § 1328(a). If they do not, their discharge would be controlled by § 1328(b). Under the latter section, the restitution order would not be dischargeable. Under the former section, there is considerable doubt whether the restitution order would be dischargeable.

*Id.* at 550.[11] On the other hand, *United States Aid Funds Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 750-51 (9th Cir. BAP 1998), found that the complaint to determine the dischargeability of student loans under § 523(a)(8) was ripe prior to completion of payments under the debtor's chapter 13 plan because discharge of

---

[11] *Heincy* was decided prior to the 1990 amendments to the Code, which added § 1328(a)(3) to except restitution from a general chapter 13 discharge. *See also Ryan v. United States (In re Ryan)*, 07.3 I.B.C.R. 54, 56, 2007 WL 2215387, at *3 (Bankr. D. Idaho 2007) (citing the former and present language of § 1328(a)(3) and the legislative history for the paragraph.). Nonetheless, *Heincy's* holding in relation to ripeness remains valid.

MEMORANDUM OF DECISION - 8

student loans is the same under either § 1328(a) or § 1328(b).[12]

Therefore, following *Heincy* and *Taylor*, ripeness of dischargeability issues depends upon whether the types of claims are dischargeable only under § 1328(b).[13]

### a. The § 523(a)(6) cause of action

Here, the Court determines the § 523(a)(6) cause is not and would not be ripe unless Debtor brings a motion for a hardship discharge under § 1328(b). This conclusion flows from the foregoing authorities. It is further buttressed by Interim Fed. R. Bankr. P. 4007(d), which states:

> (d) On motion by a debtor for a discharge under § 1328(b), the court shall enter an order fixing the time to file a complaint to determine the dischargeability of any debt under § 523(a)(6) and shall give no less than 30 days' notice of the time fixed to all creditors in the manner provided in Rule 2002.

Interim Fed. R. Bankr. P. 4007(d).[14] The advisory committee note to Interim Rule

---

[12] In *Ryan*, *supra* note 11, the Court noted that a prior adversary proceeding brought by Ryan, Adv. No. 03-06364-TLM, was found not to be ripe because it was uncertain whether debtor would complete his plan payments. *Taylor* was not discussed by the Court in reaching its conclusions in the first Ryan adversary, and the Court's observations therein about ripeness were overbroad.

[13] *See also* Keith M. Lundin, *Chapter 13 Bankruptcy* § 343.1 at 343-21 (3d ed. 2000 & Supp. 2004) ("It has been held that a complaint objecting to discharge on a ground specified in § 523(c) that is only applicable at hardship discharge is premature when filed before the debtor has requested a hardship discharge.") (citing *In re Auld*, 187 B.R. 351, 353 (Bankr. D. Kan. 1995)).

[14] This Court adopted the Interim Rules pursuant to its General Order Nos. 199 and 200.

MEMORANDUM OF DECISION - 9

4007(c)[15] and (d) explains:

> Subdivision (c) is amended to reflect the 2005 amendments to § 1328(a) of the Bankruptcy Code. This revision expands the exceptions to discharge upon completion of a chapter 13 plan. Subdivision (c) extends to chapter 13 the same time limits applicable to other chapters of the Code with respect to the two exceptions to discharge that have been added to § 1328(a) and that are within § 523(c).
>
> The amendment to subdivision (d) reflects the 2005 amendments to § 1328(a) that expands the exceptions to discharge upon completion of a chapter 13 plan, including two out of three of the provisions that fall within § 523(c). However, the 2005 revision to § 1328(a) do not include a reference to § 523(a)(6), which is the third provision to which § 523(c) refers. Thus, the need for subdivision (d) is now limited to that provision.

*Id*.

Debtor has not moved for a § 1328(b) hardship discharge. Thus, it is premature for the Court to consider the § 523(a)(6) allegations. The Motion, insofar as it concerns this cause of action, will be denied, and this cause of action will be dismissed.

### b. Section 1328(a)(4) as an "alternative"

The Court further concludes that the "willful and malicious injury"

---

[15] Interim Fed. R. Civ. P. 4007(c) states:

(c) Except as provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002.

contentions advanced by Plaintiff under § 523(a)(6) cannot be decided under § 1328(a)(4).  Though a complaint under § 1328(a)(4) is not governed by Interim Rule 4007(c) or (d), and may be filed at any time, *see* Interim Fed. R. Bankr. P. 4007(b), thus negating the ripeness concern, Plaintiff did not plead § 1328(a)(4).  This is important.  Despite their similarities, § 1328(a)(4) and § 523(a)(6) are clearly different.[16]  And a plain reading of the statute[17] finds the § 1328(a)(4) exception to a general discharge to be separate and distinct from the § 523(a)(6) exception to a hardship discharge.  Were they to be treated as interchangeable, there would be no reason for Congress to have enacted the explicit language in § 1328(a)(4), as a simple incorporation of § 523(a)(6) in § 1328(a)(2) would have sufficed.

In short, BAPCPA's failure to incorporate § 523(a)(6) in § 1328(a)(2), and its addition of a separate, nonidentical provision in § 1328(a)(4) support the

---

[16] Section 523(a)(6) requires "willful *and* malicious" action by the debtor, whereas § 1328(a)(4) requires that the debtor's acts be "willful *or* malicious."  The § 1328(a)(4) exception applies to a debt for "restitution or damages *awarded*" in a civil action against the debtor, implying the existence of a prebankruptcy judgment, where § 523(a)(6) contains no such limitation.  *See also In re Byrd*, 2007 WL 670530, at *2 (Bankr. C.D. Ill. March 1, 2007) (concluding that a "pre-petition award of restitution or damages for willful or malicious injury is a prerequisite to a finding of nondischargeability under § 1328(a)(4).") (citations omitted).  Finally, § 1328(a)(4) requires "injury by the debtor that caused *personal injury to an individual or the death of an individual*" while § 523(a)(6) covers an injury "to another entity *or to the property of another entity*."

[17] In construing the Bankruptcy Code, this Court has stated: "Construction of the Code begins with the language used by Congress, and its 'plain meaning' is to be followed."  *Ryan*, 07.3 I.B.C.R. at 55 n.10 (citing cases); *see also Crawforth v. Ajax Enters., LLC (In re Pheasant Cove)*, 2008 WL 187529, at *4 (Bankr. D. Idaho January 18, 2008) (citing *Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 380 B.R. 799, 807-08 (9th Cir. BAP 2007)).

MEMORANDUM OF DECISION - 11

conclusion that this Court should not consider Plaintiff's "willful and malicious" arguments, which were pleaded specifically under § 523(a)(6), as implicating or arising under § 1328(a)(4).

### c. The § 523(a)(4) cause of action

Regarding Plaintiff's § 523(a)(4) cause of action, the Court notes that the adversary complaint was timely filed under Interim Rule 4007(c). Further, § 1328(a)(2) expressly excepts from a general chapter 13 discharge any debt under § 523(a)(4). As in *Taylor*, the question is ripe, and the Court will proceed with determination of the Motion as related to the § 523(a)(4) cause of action.[18]

### C. Issue preclusion

Issue preclusion "protect[s] the finality of decisions and prevent[s] the proliferation of litigation." *Littlejohn v. United States*, 321 F.3d 915, 919 (9th Cir. 2003). This doctrine is "intended to avoid inconsistent judgments and the related misadventures associated with giving a party a second bite at the apple." *Lopez v.*

---

[18] Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiff's brief in support of the Motion focused on the theories of larceny and embezzlement under § 523(a)(4). Adv. Doc. No. 9, attach. 5 at 10-15. However, Plaintiff's adversary complaint is decidedly indistinct as to which one (or more) of the three § 523(a)(4) categories is alleged. For example, the complaint at ¶ 8 alleges that "as a result of the *deliberate* actions of the defendant in *breach of fiduciary duty* of care and *conversion* of Plaintiff's property, amounting to an *embezzlement*, defendant has *willfully caused injury* to the Plaintiff[.]" At ¶ 9, he alleges "as a result of the *deliberate* actions of defendant in *converting* the Plaintiff's property amounting to *larceny*, defendant has caused a *willful injury* to Plaintiff[.]" In ¶ 12, Plaintiff alleges that, as a result of such "deliberate actions," Debtor should be denied a discharge of the Plaintiff's claims under §§ 523(a)(2), (4) and (6). That the prayer for relief is as conflated as the allegations preceding it is not surprising. However, clarity may be enhanced when the § 523(a)(4) claims, and the § 523(a)(2) claims that were not part of the present Motion, are brought forward for trial.

MEMORANDUM OF DECISION - 12

*Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 (9th Cir. BAP 2007). Issue preclusion applies in § 523(a) dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 285 at n.11 (1991).[19] This Court in *United Services Automobile Assn. v. Pair (In re Pair)*, 01.3 I.B.C.R. 99 (Bankr. D. Idaho 2001), recognized that application of issue preclusion, formerly referred to as collateral estoppel, is left to the discretion of the bankruptcy court. *Id*. at 100 (citations omitted).

The Court must apply state law to determine the preclusive effect of a state court judgment. *Dominiguez v. Elias (In re Elias)*, 302 B.R. 900, 911, 03.4 I.B.C.R. 243, 247 (Bankr. D. Idaho 2003).[20] Under Idaho law, five factors must be established in order for a judgment to have issue preclusive effect:

> (1) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id*. (citing *Rodriguez v. Dep't of Correction*, 29 P.3d 401, 404 (Idaho 2001)). *See*

---

[19] For a thorough discussion of issue preclusion and claim preclusion in bankruptcy cases, *see* Christopher Klein et al., *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr. L.J. 839 (2005) (hereafter "Klein").

[20] *See also Nourbakhsh*, 67 F.3d 798, 801 (9th Cir. 1995) ("[u]nder Florida [issue preclusion] law, the default judgment against [debtor] operates to bar relitigation of the fraud issue in bankruptcy court."); Klein, *supra* note 19, at 854 (due to the lack of uniformity on the preclusive effect of a default judgment, "whether an issue necessary for entry of a default or consent judgment can be relitigated will depend on the court where the judgment was taken.").

MEMORANDUM OF DECISION - 13

*also Coryell v. Coryell (In re Coryell)*, 97.1 I.B.C.R. 11, 11-12 (Bankr. D. Idaho 1997); *Mastrangelo v. Sandstrom, Inc.*, 55 P.3d 298 (Idaho 2002).

In *Coryell*, this Court considered "the issue of whether a classic default, where the defaulted party has made no appearance in the action, satisfies the 'actually adjudicated' element[.]" 97.1 I.B.C.R. at 12. Noting that the Idaho Supreme Court had never expressly determined the question, this Court looked to the Restatement (Second) of Judgments. Following an analysis of § 27, comment e, of the Restatement, the Court concluded that "if a judgment is entered by default, none of the issues determined in the case are 'actually adjudicated.' Thus, collateral estoppel [issue preclusion] should *not ordinarily* apply to preclude an issue in a subsequent action." *Id.* (emphasis added). The caveat "not ordinarily" reflected the possibility that circumstances might indicate preclusion would be appropriate notwithstanding that "it is in the interest of predictability and simplicity for such a result [nonpreclusion of default judgment] to obtain uniformly." Restatement (Second) of Judgments, § 27, comment e.

This Court therefore concluded "a flexible approach is required, and a default judgment should not be *automatically* binding in a subsequent action in all circumstances." 97.1 I.B.C.R. at 12 (emphasis supplied). When, then, should issue preclusion apply? *Coryell* explains:

> First, courts are more likely to afford collateral estoppel effect to default judgments when the defendant participated in

MEMORANDUM OF DECISION - 14

the prior case to some degree, or when the default judgment was entered as a sanction against the defendant for dilatory or otherwise improper litigation tactics. On the other hand, courts are less likely to afford collateral estoppel effect to default judgments awarded when the defendant never appeared or filed any paper in the action.

The Restatement's requirement that an issue be 'actually litigated' embodies the rationale that a party may choose not to litigate issues for reasons that have nothing to do with the merits of the case. For example, the incentive of a penniless Defendant on the verge of bankruptcy to defend an action for damages may significantly differ from the incentives of that same debtor to defend a complaint seeking to have the same debt declared forever nondischargeable. This reality is consistent with Comment e of the Restatement, which recognizes a cost-benefit analysis as one of the 'many reasons why a party may choose not to raise an issue, or to contest an assertion.' Restatement (Second) of Judgments § 27, cmt. e.

Such a rule does not offend the purposes served by the collateral estoppel doctrine. Although judicial resources are limited and valuable, relatively few are expended in processing a default judgment. Likewise, the party seeking the benefit of issue preclusion cannot be said to have been oppressed or harassed since its reasonable expectations would have been the necessity of at least one trial on the merits. And, if collateral estoppel effect is denied to the default judgment, still only one trial will occur, albeit in the bankruptcy Court.

In the absence of guiding case law to the contrary, the Court assumes that the Idaho Supreme Court would follow the rule that appears best to effectuate the policies that underlie the doctrine. Accordingly, the Court presumes that if faced with the precise issue presented here, the Idaho Supreme Court would adopt the Restatement (Second) of Judgments § 27, comment e, and a flexible application of the 'actually litigated' requirement. Only a party who in some degree actively participates in the resolution of factual issues through normal adjudicative procedures, even though that participation is not complete,

MEMORANDUM OF DECISION - 15

>   should be bound in subsequent, related proceedings involving
>   the same parties and issues.

*Id*. at 13 (footnotes omitted).[21]

In applying these concepts in *Coryell*, the Court noted that the "defendant did not actively participate in the litigation in any fashion." *Id*. Moreover, "the state court hearing involved the submission of no significant evidence or testimony for critical review or examination by the state judge prior to entry of the finding that Defendant had committed fraud." *Id*. Thus, the issues were never actually adjudicated by the state court, and the default judgment was not entitled to issue preclusive effect. *Id*.

Later, in *Pair*, this Court stated that "when trying to determine whether a case was 'actually litigated,' the court should look at the entire record of the state proceeding, not just the judgment." 01.3 I.B.C.R. at 100 (citations omitted). *Pair* declined to exercise discretion in favor of giving issue preclusive effect to a default judgment, noting *inter alia* that only the state court complaint and judgment were provided, and that "[n]o other information about the state court case [was] provided, and in particular, nothing showing the extent of Defendant's participation in that action, nor any details concerning what sort of 'proof' was

---

[21] Although the Idaho Supreme Court still has not definitively addressed the issue, the Idaho Court of Appeals, in a decision subsequent to *Coryell*, did in fact turn to the Restatement (Second) of Judgments for assistance in determining the issue preclusive effect of a default judgment. *See Robertson Supply, Inc. v. Nicholls*, 952 P.2d 914, 918 (Idaho Ct. App. 1998). However, the court's issue preclusion analysis in *Nicholls* focused on the identity of issues factor, and not the actually decided factor.

MEMORANDUM OF DECISION - 16

submitted to the state court in support of the bare allegations of the complaint to justify entry of the judgment." *Id*.

In *Elias*, this Court again considered the issue preclusive effect of a state court default judgment in a nondischargeability context. There, however, the debtor defendant had "appeared through counsel and participated extensively in the litigation" up to the point when the default judgment was entered. 302 B.R. at 911.[22] Based on the facts present there, *Elias* gave issue preclusive effect to the state court default judgment.

The instant case far more closely resembles *Coryell* and *Pair* than *Elias*. Following review of this Court's prior decisions, and Idaho case law, the Court concludes that the issues in Plaintiff's state court action against Debtor were not "actually adjudicated" and, thus, issue preclusion does not apply to resolve the § 523(a)(4) cause(s) asserted.[23]

**CONCLUSION**

Plaintiff's § 523(a)(6) cause of action is not ripe for adjudication and will be dismissed. Plaintiff's Motion for Summary Judgment will be denied. Trial on

---

[22] *See also id*. at 903-04 (describing the history of the prior civil case including debtor defendant's appearance, through counsel, and filing of an answer denying most of the allegations, and opposing plaintiff's motion to amend the complaint to add a claim for punitive damages, and the state court's entry of default judgment when, following withdrawal of defense counsel, debtor failed to appoint new counsel or appear on his own behalf, a decision at least partially based on the strategy of filing bankruptcy).

[23] Given the Court's conclusion on the "actually adjudicated" factor, it need not address the other issue preclusion factors including whether the issues presented in the two cases are sufficiently identical.

MEMORANDUM OF DECISION - 17

the issues under § 523(a)(4), and on contentions under § 523(a)(2), will be scheduled.

    An appropriate form of order will be entered by the Court.

DATED: March 12, 2008

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 18